UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DERRICK FIELDS,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**TARGET CORPORATION,** )<br>)<br>**Defendant.** )<br>) | Civil Action Number<br>**2:16-cv-00276-AKK** |

## MEMORANDUM OPINION

Derrick Fields brings this case against Target Corporation following an incident where he fell and injured his knee while shopping at a Target located in the Promenade Shopping Center in McCalla, Alabama. Fields claims a spilled liquid caused his fall, and that Target's failure to remove or otherwise warn him about the spill constituted negligence. Target has filed a motion for summary judgment, doc. 30, arguing that Fields has presented no evidence suggesting it was on notice, as Alabama law requires, of the spill's presence. That motion is now fully briefed, docs. 34; 36, and ripe for review. After careful consideration of the record evidence and the briefs, this court has determined that Target lacked both actual and constructive notice of the spill, and accordingly its motion is due to be granted.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255. It is expressly not the role of the court "to weigh conflicting evidence or to make credibility determinations." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996); *see also Anderson*, 477 U.S. at 255 (explaining "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). "[A] . . . 'scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.'" *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). Instead, if "the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## **III. FACTS**

The facts in this slip-and-fall negligence case are straightforward. On October 2, 2015, Fields, along with his sister, Latoya Ferguson, visited a Target Pharmacy located in McCalla, Alabama, to pick up a prescription. Doc. 34 at 2. After retrieving the prescription, they attempted to exit the store through an aisle directly in front of the pharmacy. *Id.* at 2–3. Security footage reveals that a Target employee, Debbie Hamilton, exited that aisle seconds before Fields entered. Doc. 30-4 at 10, 13. Hamilton testified that she did not notice anything on the ground while she was in the aisle. *Id.* at 14. The security footage shows that Hamilton was concentrated on the shelves and never walked through the area where Fields would eventually fall. Doc. 34-5 at 0:00–0:04.[1] The parties have presented no evidence to suggest any other Target employee was present in the aisle around the time of Fields' accident.

---

[1] The security footage shows that Hamilton only took a few steps into the aisle before exiting. Doc. 34-5 at 0:00–0:04. Hamilton testified that she entered the aisle temporarily in an attempt to locate a specific item for a customer, and that she did not recall speaking to Fields when she passed him on her way back to the pharmacy. Doc. 30-4 at 10, 13–14.

3

As Fields reached the approximate mid-point of the aisle, he suddenly fell forward striking his knees on the ground. Docs. 34 at 4; 30-1 at 4. Fields alleges he slipped and fell because of a wet substance on the floor. Doc. 34 at 4. However, he testified that he did not notice anything on the ground before falling. Doc. 30-3 at 46. He also indicated that he had no recollection of the size of the spill, and that he never looked back to see what had caused his fall. *Id.* at 47–49. A Target employee, Zuhair Alqaza, quickly arrived to assist Fields and noticed that his pants were wet to the knee. Doc. 34 at 5. Alqaza provided a statement to Target shortly after the incident indicating that while helping Fields he had noticed a "small wet spot" about 8 inches in diameter on the floor of the aisle. Doc. 34-8 at 1. After about twenty seconds, Fields got to his feet, and he eventually left the store without further assistance. Docs. 34 at 4; 34-5 at 3:30–4:00.

Hamilton also returned to the aisle to assist Fields after his accident. Doc. 30-1 at 6. She testified that she noticed "three or four" small drops of water "about the size of . . . a nickel" on the floor by Fields and assumed that they had caused his fall. Doc. 30-4 at 16, 20. Upon noticing the liquid on the floor, Hamilton returned to the pharmacy and gathered a small handful of paper towels. *Id.* at 16. She wiped the floor around where the fall occurred for about fifty seconds before again returning to the pharmacy. Doc. 34-5 at 1:10–2:08. Target never determined

either the source of the liquid on the floor or when the spill had initially occurred. Doc. 30-5 at 66.[2]

## IV. DISCUSSION

An Alabama premises owner owes her invitees "a duty to keep the premises in a reasonably safe condition and to warn them of any 'defects and dangers that are known to the landowner but are unknown or hidden to the invitee[s].'" *Edwards v. Intergraph Servs. Co.*, 4 So. 3d 495, 503 (Ala. Civ. App. 2008) (quoting *Prentiss v. Evergreen Presbyterian Church*, 644 So. 2d 475, 477 (Ala. 1994)). Liability in this context is based on the shopkeeper's presumably superior knowledge regarding potential dangers on the premises and "'if that superior knowledge is lacking . . . the [shopkeeper] cannot be held liable.'" *Jones Food Co. v. Shipman*, 981 So. 2d 355, 363 (Ala. 2006) (quoting *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980)). Alabama courts have repeatedly noted that "'[t]he owner of a premises . . . is not an insurer of the safety of his invitees . . . and the principle of res ipsa loquitor is not applicable.'" *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000) (quoting *Tice v. Tice*, 361 So. 2d

---

[2] Fields hints in his brief that Target improperly failed to preserve security footage of the aisle prior to the accident, and that it failed to gather or produce a Team Member Witness Statement for Debbie Hamilton. However, Fields neither raised any discovery issues with this court nor sought to compel the production of any documents, and he does not accuse Target of spoliation. To the extent that Fields is now claiming that he cannot prove his case because of Target's purported failure to preserve evidence, such contentions ring hollow. As the plaintiff, Fields has the burden to prove his case and cannot seek to excuse his inability to do so by belatedly accusing Target of a purported failure to preserve relevant evidence.

1051, 1052 (Ala. 1978)). Put another way, "'no presumption of negligence . . . arises from the mere fact of an injury to an invitee.'" *Id.* (quoting *Tice*, 361 So. 2d at 1052).

Accordingly, to prove negligence on the part of a shopkeeper, the plaintiff typically must show that the shopkeeper had actual or constructive notice of the hazard by proving: (1) "the foreign substance slipped upon was on the floor a sufficient length of time to impute constructive notice to the [shopkeeper]," (2) "that the [shopkeeper] had actual notice of the substance's presence on the floor," or (3) "that the [shopkeeper] was delinquent in not discovering and removing the foreign substance." *Hale v. Kroger Ltd. P'ship I*, 28 So. 3d 772, 779 (Ala. Civ. App. 2009) (quoting *Winn-Dixie Store No. 1501 v. Brown*, 394 So. 2d 49, 50 (Ala. Civ. App. 1981)). Alternatively, in situations "where the plaintiff alleges that the business negligently created on the premises a hazardous condition that proximately caused injury to the plaintiff," the law will presume notice on the part of the shopkeeper. *Nelson v. Delchamps, Inc.*, 699 So. 2d 1259, 1261 (Ala. Civ. App. 1997) (citing *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 465 (Ala. 1992)).

Fields does not contend that Target affirmatively created the hazard that caused his fall or that Target had actual notice of that hazard. Instead, Fields focuses on constructive notice arguing that the substance causing his fall was on

6

the floor for a sufficient time to impute constructive notice to Target or, in the alternative, that Target was delinquent in failing to discover the substance prior to Fields' accident. The court will address each argument in turn.

*A. Constructive Knowledge*

Even if a shopkeeper lacks actual knowledge of a potential hazard on her premise, constructive knowledge is imputed to her if "the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it." *Hale*, 28 So. 3d at 779. There is no requirement that Fields produce direct evidence of the length of time the foreign substance was on the floor. *See id.* Instead circumstantial evidence including "evidence regarding the nature and condition of the substance" is permissible "to allow the trier of fact to infer the length of time that the substance had remained on the floor." *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 17 (Ala. 1990). The main thrust of Alabama case law in this area is to presume constructive knowledge of a hazard only if the hazard persists "for . . . an inordinate length of time." *Cash v. Winn-Dixie Montgomery, Inc.*, 418 So. 2d 874, 876 (Ala. 1982).

Here, Fields has presented almost no evidence specifically pertaining to the nature or condition of the substance that caused his fall. Neither Fields nor his sister saw the substance until after the accident occurred, and neither offered any other information regarding the spill save that it apparently consisted of a clear

7

liquid. *See* Docs. 30-6 at 11, 15; 30-3 at 46–49. One Target employee, Alqaza, gave a statement indicating that he had noticed a wet spot about eight inches in diameter after Fields fell, doc. 34-8 at 1, and Hamilton testified that the spill appeared to consist of three to four small coin-sized drops of clear liquid. Doc. 30-4 at 16.[3] Relying on this testimony, Fields suggests that the spill was large enough to create an inference that it must have persisted for some time. This contention is unavailing, however, because the size of a spill has little relation with its duration; after all, "[a] large spill can be as sudden as a small spill." *Tidd v. Walmart Stores, Inc.*, 757 F. Supp. 1322, 1324 (N. D. Ala. 1991). Further, in this instance, Fields has not argued and the evidence does not support a finding that the spill was so large and obvious that it need have only existed for a very short amount of time to reasonably charge Target with constructive notice.

In any event, Fields has offered no evidence regarding when the spill occurred or how long it remained on the floor. Nor can the court infer that the spill had persisted for a significant period of time because Fields has presented no circumstantial evidence regarding the condition of the liquid on the ground, other than the aforementioned size of the spill. Evidence of size alone is simply not enough to impute notice of the spill to Target, and the record is otherwise devoid

---

[3] Fields' sister, who was on the same aisle, saw the fall out of the corner of her eye. Doc. 30-6 at 12. Like Fields, she testified that she did not notice anything on the ground until after the accident. *Id.* at 11, 14–15.

8

of evidence capable of creating an inference that the "spill had been [on the floor] long enough to raise a duty on the part of [Target] to discover and remove it." *Tidd*, 757 F. Supp. at 1324. Quite simply, "there is no evidence whatsoever that the [spill] had been on the floor for any appreciable time," and accordingly there is no legally sufficient basis to impute constructive notice of the spill to Target. *Cash*, 418 So. 2d at 876.[4]

### B. Delinquent Inspection

The primary thrust of Fields' argument is that Target was "delinquent in not discovering and removing" the foreign substance that caused his fall. *S.H. Kress & Co. v. Thompson*, 103 So. 2d 171, 174 (Ala. 1957). The parties do not dispute that Target has reasonable anti-slip procedures in place which require, among other things, that employees keep floors dry and remove spills immediately upon discovery. Doc. 31-1 at 50.[5] The disagreement turns instead on whether Hamilton adequately discharged her duty with regard to discovering and removing the spill.

---

[4] Fields' argument for constructive notice is not based on how long the spill remained on the floor. Indeed, he admits that there is no evidence on that particular point. Doc. 34 at 10. Instead, because a Target employee entered the aisle and failed to notice the spill, Fields contends that the spill lasted long enough to charge Target with constructive notice. This argument, however, goes toward the purported inadequacy of an employee's inspection rather than whether the spill lasted for a sufficient period of time to impute notice to the shopkeeper. Accordingly, the court will address this argument *infra* in Part IV. B.

[5] Target maintains a set of best practices for slip and fall prevention. Employees receive training in these practices and the procedures are included in the employee handbook. Doc. 31-1 at 51. Pursuant to these policies, employees must "[c]orrect or report any unsafe condition immediately." *Id.* at 49. Further, Target employees generally have the responsibility of making sure the aisles are clean and clear while they are on duty. Doc. 30-5 at 34. Critically, Fields has not presented any evidence that Target employees failed to perform these duties as required.

9

Fields argues that Hamilton was in the vicinity of the spill immediately before his fall, and accordingly that her failure to detect the clear liquid was unreasonable in light of the apparent size of the spill.

The evidence supporting this contention consists of approximately four minutes of security footage. The video reveals that Hamilton was standing at the end of the aisle where the spill occurred for approximately three seconds before leaving. Doc. 30-5 at 0:00–0:03. It does not show Hamilton walking past the area where the spill occurred or even looking in that direction. *Id.* The video does not even show from which direction Hamilton initially entered the aisle. *Id.* Moreover, Hamilton testified she entered the aisle for the purpose of obtaining a specific item for a customer. Doc. 30-4 at 10. In other words, Hamilton was not conducting an inspection of the area, and her failure to conduct such an inspection does not help Fields because he does not broadly argue that Target lacks reasonable safety inspection procedures in its stores.

Furthermore, the parties generally agree that the spill was not plainly visible. Indeed, neither Fields' nor his sister, Ferguson, spotted the spill as they walked directly down the aisle. Docs. 30-3 at 46; 30-6 at 11. In fact, Ferguson testified that she had to remove her tinted eyeglasses and concentrate intently to notice the spill, and she can be seen in the security footage crouching down to inspect the ground after the accident. Docs. 30-6 at 11, 14–15; 30-5 at 0:50–0:58. The fact

10

that all three people in the area failed to notice the spill, while not dispositive, is strong evidence that Hamilton's failure to notice the liquid on the ground was reasonable. This is especially true in light of the fact that Hamilton was not performing a safety inspection, and Fields does not allege otherwise. On this record, there is simply no indication that Hamilton's failure to notice the presence of a small spill in an area she did not walk through rose to the level of delinquency.[6]

## V. CONCLUSION

In Alabama, "[u]pon the plaintiff rests primarily the burden of showing that the injury was proximately caused by the negligence of the store-keeper, or one of its servants or employees." *F. W. Woolworth Co. v. Ney*, 194 So. 667, 669 (Ala. 1940). As part of this showing, the prima facie case requires that the storekeeper

---

[6]Fields points to the fact that Hamilton noticed the spill from the end of the aisle after his fall as evidence that Hamilton's failure to notice the spill earlier was unreasonable. This argument ignores the context surrounding Hamilton's behavior. Alabama law specifically indicates that the reasonableness of a party's actions accounts for "'the situation and knowledge of th[at] [party] under all of the attendant circumstances.'" *Shanklin v. New Pilgrim Towers, L.P.*, 58 So. 3d 1251, 1256 (Ala. Civ. App. 2010) (quoting *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 n.2 (5th Cir. 1974)). So, while it may be reasonable to notice a small spill after someone has fallen, this says nothing about the reasonableness of failing to notice such a spill while performing a different task nearby. In this case, the evidence simply does not indicate a large obvious spill. An eight inch spill, roughly the length of a dollar bill, consisting of a clear liquid over a white tile floor is not so obvious that it is patently unreasonable for an employee to fail to notice its presence. Indeed, this is demonstrated by the failure of Fields and his sister to notice the spill *as they walked directly toward it*. As discussed, the video demonstrates Hamilton staring at the shelves at the end of the aisle rather than at the floor. Doc. 30-5 at 0:00–0:04. This evidence is simply insufficient to generate a reasonable inference that Hamilton's failure to notice the spill in the approximately two seconds she is shown in its vicinity was negligent. *Id.* at 0:00–0:02.

have "[a]ctual or constructive notice of the presence of the offending instrumentality." *Id.* "If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted). At best, Fields' evidence is merely colorable, it is not sufficient to create a genuine issue of material fact regarding whether Target had actual or constructive notice of the presence of the foreign substance which purportedly caused Fields' accident. Accordingly, Target is entitled to judgment as a matter of law with respect to Fields' negligence claim, and its Renewed Motion for Summary Judgment, doc. 30, is due to be granted.

    **DONE** the 6th day of October, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE